J-A20037-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

DeLUCA ENTERPRISES, INC., AND   :      IN THE SUPERIOR COURT OF
DeLUCA OFFICE ASSOCIATES, G.P.,   :         PENNSYLVANIA
                                     :
            v.                :
                                       :
SAP AMERICA, INC., AND IDS SCHEER   :
AMERICA, INC.,                       :
                                       :
APPEAL OF:  DeLUCA OFFICE          :
ASSOCIATES, G.P.,                  :
                                       :
            Appellant         :       No. 3278 EDA 2013

Appeal from the Judgment entered on October 24, 2013
in the Court of Common Pleas of Bucks County,
Civil Division, No. 2008-02365

BEFORE:  FORD ELLIOTT, P.J.E., MUNDY and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:        **FILED SEPTEMBER 05, 2014**

DeLuca Office Associates, G.P. ("DeLuca"), appeals from the Judgment entered against it and DeLuca Enterprises, Inc.[1] (collectively referred to as "Plaintiffs"), and in favor of SAP America, Inc. ("SAP"), and IDS Scheer Americas, Inc. ("IDS").[2] We affirm.

The trial court concisely set forth in its Opinion the relevant facts and procedural history underlying this appeal, which we adopt herein by

---

[1] DeLuca Enterprises, Inc. is not a party to this appeal.

[2] IDS is not a party to this appeal.

J-A20037-14

reference. *See* Trial Court Opinion, 2/10/14, at 2-5.[3, 4]

On appeal, DeLuca presents the following issues for our review:

Did the trial court abuse its discretion and/or commit an error of law in granting a nonsuit in favor of [SAP] on [DeLuca's] breach of contract claim against [SAP]:

   a. [B]y prejudging and prematurely deciding, and as a result dismissing, Count 1 of [DeLuca's] Amended Complaint[, *i.e.*, breach of contract,] before the close of [DeLuca's] case[-]in[-]chief[?]

   b. [B]y failing to find that [DeLuca] presented sufficient evidence for the jury to find that [SAP] failed to deliver the [Enterprise Resource Planning] Software for the Homebuilding Industry [] containing the functional specifications [DeLuca] contracted for, as admitted by [SAP's] former Senior Vice President, Keith Peterson ["Peterson"], thereby allowing the jury to conclude that [SAP] breached its contract with [DeLuca?]

   c. [B]y failing to find that [DeLuca] presented sufficient evidence for the jury to find that [SAP] denied [DeLuca] the "use" of the software[,] as agreed under the terms of the [Software Licensing Agreement,] thereby allowing the jury to conclude that [SAP] breached its contract with [DeLuca?]

   d. Without considering the full and complete testimony of [Peterson]?

Brief for Appellant at 6 (some capitalization omitted).

---

[3] We observe that SAP moved for nonsuit regarding Plaintiffs' breach of contract claim against SAP after the conclusion of Plaintiffs' case-in-chief. The trial court judge, the Honorable Robert J. Mellon, granted SAP's Motion at that time.

[4] In DeLuca's Post-Trial Motion, DeLuca requested that the trial court vacate its grant of SAP's Motion for Nonsuit, and grant DeLuca a new trial (before a different judge) on its breach of contract count against SAP. Therefore, only DeLuca's breach of contract count is relevant to this appeal.

- 2 -

Initially, we express our disapproval of the Rule 1925(b) Concise Statement filed by DeLuca. DeLuca's Statement, which is anything but concise, is *14 pages* in length and sets forth 20 separate issues (and 28 sub-issues), many of which are redundant and voluminous. **See** Rule 1925(b) Concise Statement, 12/16/13; **see also** Pa.R.A.P. 1925(b)(4)(iv) (providing that "[t]he Statement should not be redundant or provide lengthy explanations as to any error."); Trial Court Opinion, 2/10/14, at 5 (expressing disapproval of DeLuca's Rule 1925(b) Concise Statement). Although we acknowledge that Rule 1925(b) provides that, without more, the number of issues raised in a Concise Statement will not be grounds for finding waiver, this principle applies only "[w]here non-redundant, non-frivolous issues are set forth in an appropriately concise manner[.]" Pa.R.A.P. 1925(b)(4)(iv); **see also Tucker v. R.M. Tours**, 939 A.2d 343, 346 (Pa. Super. 2007) (stating that "Pa.R.A.P. 1925(b) is not satisfied by simply filing any statement. Rather, the statement must be 'concise' and coherent as to permit the trial court to understand the specific issues being raised on appeal."); **Kanter v. Epstein**, 866 A.2d 394, 401 (Pa. Super. 2004) (stating that "[b]y raising an outrageous number of issues" in a Rule 1925(b) statement, an appellant impedes the trial court's ability to prepare an opinion addressing the issues on appeal, thereby effectively precluding appellate review). Based on DeLuca's voluminous and redundant Rule 1925(b) Statement, we could deem all of its issues waived and dismiss the

appeal. Nevertheless, we, like the trial court, will address the merits of the issues.

DeLuca challenges the trial court's grant of nonsuit regarding DeLuca's breach of contract claim against SAP.

> The trial court, on the oral motion of a party, may enter a nonsuit if the plaintiff has failed to establish a right to relief. Pa.R.C.P., Rule 230.1, 42 Pa.C.S.A. In evaluating the trial court's grant of a nonsuit, we must view the evidence adduced on behalf of the plaintiff as true, reading it in the light most favorable to [the plaintiff]; giving [the plaintiff] the benefit of every reasonable inference that a jury might derive from the evidence and resolving all doubts, if any, in [the plaintiff's] favor. Additionally, a compulsory nonsuit may be entered only in cases where it is clear that the plaintiff has not established a cause of action. When so viewed, a nonsuit is properly entered if the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action.

*Kefer v. Bob Nolan's Auto Serv., Inc.*, 59 A.3d 621, 631 (Pa. Super. 2012) (quotation marks, brackets, ellipses and citations to case law omitted).

Additionally, to the extent that DeLuca challenges the trial court's denial of its Post-Trial Motion seeking a new trial, our standard of review is as follows: "When reviewing the denial of a motion for new trial, we must determine if the trial court committed an abuse of discretion or error of law that controlled the outcome of the case." *Brady v. Urbas*, 80 A.3d 480, 483 (Pa. Super. 2013) (citation and brackets omitted).

DeLuca first argues that the trial court committed reversible error by "clearly prejudging and prematurely deciding [DeLuca's] claim for breach of contract against SAP [] in the very early stages of [DeLuca's]

- 4 -

case[-]in[-]chief ….'' Brief for Appellant at 22.[5] In support of this claim, DeLuca emphasizes Judge Mellon's following question to DeLuca's counsel, made outside of the presence of the jury during the direct examination of one of DeLuca's witnesses, James DeLuca: "Counsel, you can help me, because this is a fraud [in] the inducement case and we are now talking about the execution of a contract, aren't we?" N.T., 5/10/13, at 44-45; **see also** Trial Court Opinion, 2/10/14, at 16 (setting forth the full exchange between Judge Mellon and counsel for DeLuca). According to DeLuca,

> [t]he significance of the Trial Court's error [regarding this question to DeLuca's counsel] is that [DeLuca] was pursuing only two causes of action as against [SAP]: Breach of Contract, and Civil Conspiracy based on [SAP's] fraudulent actions in concert with [IDS.] Contrary to the Trial Court's admonition of [DeLuca's] counsel[,] … [DeLuca] did not plead a cause of action for fraud in the inducement against [SAP], but rather against IDS …. By dismissing questions about the execution of the [Software Licensing Agreement ("SLA")], the Trial Court clearly exhibited a pre-disposition to dismiss [DeLuca's] breach of contract claim ….

Brief for Appellant at 23.

Our review of the record discloses no evidence supporting DeLuca's assertion that Judge Mellon had "prejudged" or "prematurely decided" DeLuca's breach of contract claim. In his Opinion, Judge Mellon addressed DeLuca's challenge as follows:

> There is no evidence on the record showing prejudgment or predetermined decision making by the [Trial] Court. … DeLuca received a fair trial. [DeLuca was] allowed to present all of [its]

---

[5] As noted above, the record is clear that the trial court did not actually rule upon SAP's Motion for Nonsuit until *after* the conclusion of DeLuca's case-in-chief.

> witnesses and the trial was conducted in a fair manner …. At no point did the [Trial] Court interject in an inappropriate manner, or limit DeLuca from presenting [its] case.

Trial Court Opinion, 2/10/14, at 15; **see also id.** at 16 (wherein Judge Mellon stated that he "did not limit James DeLuca's testimony in any way, as he testified for three days of the trial."). Judge Mellon's analysis is supported by the record, and we discern no reversible error in his isolated comment. Further, Judge Mellon's comment in no way indicates that he had prejudged DeLuca's breach of contract claim against SAP.[6] Contrary to DeLuca's assertion, Judge Mellon did not "dismiss[] questions about the execution of the SLA[,]" *i.e.*, the contract between SAP and DeLuca.

We will next address DeLuca's related second and third issues together, as both assert that the trial court erred in granting a nonsuit based upon its determination that DeLuca had failed to establish a *prima facie* claim for breach of contract against SAP. **See** Brief for Appellant at 24-43. DeLuca first argues that the trial court erred in determining that, as SAP had undisputedly delivered the Enterprise Resource Planning ("ERP") software[7] to DeLuca, and the software was never run by DeLuca, DeLuca could not

---

[6] Indeed, Judge Mellon's comment was actually made in reference to evidence that DeLuca's counsel had presented regarding IDS's implementation efforts under IDS's separate agreement with DeLuca. DeLuca did not raise a breach of contract claim against IDS.

[7] DeLuca maintains that "the [] ERP software promised by [SAP] was to be an integrated solution for the Homebuilding Industry with state-of-the-art Variant Configuration (*i.e.*, construction options coordination and fully integrated pricing and system management) functionality embedded within the [] ERP system[.]" Brief for Appellant at 27.

establish a *prima facie* claim for breach of contract. ***Id.*** at 24-25, 26-28, 38. Specifically, DeLuca maintains that SAP breached the SLA by failing to deliver an "All-in-One [] fully integrated software system" that met the "agreed upon … ERP functional specifications." ***Id.*** at 25, 27, 38. In support of this claim, DeLuca points to the trial testimony of Peterson (SAP's former Senior Vice President), asserting that "Peterson admitted that [DeLuca] licensed ERP software[,] *i.e.*[,] a fully integrated software system built upon modules licensed under the SLA[.]" ***Id.*** at 25 (citing N.T., 5/14/13, at 162). According to DeLuca, the trial court erred in failing to adequately consider Peterson's admission, and its import to establishing a breach of the SLA, including a finding that "the software did not meet what [SAP] had agreed to license to [DeLuca]." Brief for Appellant at 25-26, 34.

DeLuca further contends that the trial court erred in "dismiss[ing] [DeLuca's] claim for breach of contract because [SAP] merely promised to 'deliver the software' … and 'delivered the software as required under the SLA[.]'" ***Id.*** at 38-39 (quoting Trial Court Opinion, 2/10/14, at 12).

Additionally, DeLuca argues that the trial court erred in failing to find that SAP breached "paragraphs 1.9 and 2.1(a) of the SLA,[8] … [which] contractually licensed the 'use' of the ERP software to enable [DeLuca] to activate, access [and] employ the software[.]" Brief for Appellant at 40

---

[8] These provisions are set forth and discussed in the trial court's Opinion. ***See*** Trial Court Opinion, 2/10/14, at 12 n.58.

(footnote added; some internal quotation marks and capitalization omitted); *see also id.* at 37-38.

Finally, DeLuca argues that SAP breached the SLA by "failing to … provide training [to DeLuca's] employees in the [u]se of [SAP's] … 'Variant Configurator' … management functionality purportedly already embedded in [SAP's] ERP software licensed to [DeLuca.]" *Id.* at 39.

In its Opinion, the trial court thoroughly addressed each of DeLuca's above-mentioned claims, set forth the applicable law, discussed the relevant evidence of record, and determined that the court properly granted a nonsuit on DeLuca's breach of contract claim. *See* Trial Court Opinion, 2/10/14, at 7-13. After review, we find that the trial court's cogent analysis is supported by the law and the record, and we therefore affirm on this basis as to DeLuca's second and third issues. *See id.*

In its final issue, DeLuca argues that Judge Mellon erred by granting SAP's Motion for Nonsuit because he failed to consider at trial all of Peterson's testimony. Brief for Appellant at 43-47. Specifically, DeLuca contends that, during the playing to the jury of the videotaped deposition of Peterson, Judge Mellon left the courtroom "at several points," and, according to DeLuca, never read the deposition transcript of Peterson's testimony. *Id.* at 43-44.

The trial court addressed this claim in its Opinion and determined that DeLuca waived the claim by its failure to object to this alleged impropriety. *See* Trial Court Opinion, 2/10/14, at 17; *see also* Pa.R.A.P. 302(a)

(providing that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Additionally, the trial court correctly determined that even if this claim was not waived, it lacks merit because the court had, in fact, "considered the entire weight of the evidence, including [] Peterson's testimony, in granting the [n]onsuit." Trial Court Opinion, 2/10/14, at 9; *see also id.* (explaining the content of Peterson's relevant testimony). We affirm with regard to this issue based on the trial court's rationale, which is supported by the record. *See id.* at 9, 17.

After reviewing the record, and viewing all of the evidence adduced at trial in the light most favorable to DeLuca, we conclude that the trial court properly determined that DeLuca had failed to establish a *prima facie* cause of action for breach of contract against SAP, and correctly granted SAP's Motion for Nonsuit regarding this count. Additionally, the trial court properly denied DeLuca's Post-Trial Motion seeking a new trial on the breach of contract count. Therefore, we affirm the Judgment entered against DeLuca.

Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/5/2014

- 9 -

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA

CIVIL ACTION

DELUCA ENTERPRISES, INC. and
DELUCA OFFICE ASSOCIATES, G.P.,    :
:
Plaintiffs,    :
:
v.    :    NO. 2008-02365
:
SAP AMERICA, INC. and    :
IDS SCHEER AMERICAS, INC.,    :
:
Defendants.    :



Case Number: 2008-02365    287
Receipt:    Z1045844    Judge: 34
Code: 5076    Filing: 10466363
Patricia Bachtle - Bucks Co Prothonotary
B09    2/10/2014 9:27:09 AM

## OPINION

This is an appeal following the denial of a Post-Trial Motion filed by Plaintiffs. Plaintiffs DeLuca Enterprises, Inc. and DeLuca Office Associates, G.P. (hereinafter "DeLuca") sued Defendant SAP America, Inc. (hereinafter "SAP") for Breach of Contract, Fraudulent Inducement, Negligent Misrepresentation, and Civil Conspiracy. Plaintiffs also sued Defendant IDS Scheer Americas, Inc. (hereinafter "IDS") for Fraudulent Inducement and Civil Conspiracy. Plaintiffs claim Defendants engaged in fraudulent activities through the sale and failed implementation of business software.

On May 7, 2013, a jury trial commenced in the Bucks County Court of Common Pleas. On May 22, 2013, after nine (9) days of trial, SAP made a Motion for Nonsuit on the Breach of Contract claim, which was granted by the Court. The jury returned a Verdict in favor of the Defendants on the remaining counts, finding neither Defendant engaged in fraudulent behavior in an attempt to induce the Plaintiff to enter into a Software License Agreement. On June 3,

2013, Plaintiffs filed a Motion for Post-Trial Relief, seeking to vacate the jury's Verdict and have a new trial before a different judge. On September 17, 2013, the Motion for Post-Trial Relief was denied. On November 22, 2013, Plaintiffs filed their Notice of Appeal to the Pennsylvania Superior Court. This Opinion follows pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).[1]

## FACTUAL AND PROCEDURAL BACKGROUND

DeLuca is a corporation located in Bucks County, Pennsylvania that specializes in land development, construction, and the sale of residential homes.[2] SAP is a business software company incorporated in Delaware and doing business in Newtown Square, Pennsylvania.[3] IDS was a Delaware corporation doing business in Berwyn, Pennsylvania that was in the business of implementing software.[4] Prior to 2006, DeLuca ran several different software programs for various aspects of their business, few of which were integrated.[5] In July 2006, DeLuca sought to replace its "legacy" software system, as they were looking for an "All-in-One" solution to run the business and improve customer experience.[6] DeLuca's ultimate goal was to be able to sell homes over the Internet.[7] DeLuca began discussions with SAP in July 2006 to license new business software.[8] For the next six (6) months, both parties engaged in extensive discussions, negotiations, and demonstrations regarding the scope and nature of the project.[9] The type of business software DeLuca sought to install needed to be specially customized to each

---

[1] "Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. Rule 1925 is a crucial component of the appellate process." Commonwealth v. Seibert, 799 A.2d 54, 62 (Pa. Super. 2002).
[2] Amend. Compl. ¶ 11.
[3] Amend. Compl. ¶¶ 5,14.
[4] Amend. Compl. ¶ 6; Notes of Testimony (hereinafter "N.T.") 5/8/13 PM, 31:4-14.
[5] N.T. 5/8/13 AM, 114:13-115:16.
[6] N.T. 5/9/13 AM, 75:5-12; N.T. 5/14/13 PM, 4:4-7.
[7] N.T. 5/9/13 PM, 9:25-10:6.
[8] N.T. 5/8/13 AM, 118:3-5.
[9] N.T. 5/8/13 AM, 118:23-119:3.

2

purchaser.[10] During this time, SAP introduced DeLuca to IDS, a company SAP frequently worked with on implementation and customization of business software.[11]

This new project was to be an Enterprise Resource Planning (hereinafter "ERP") system, which was designed to replace all of the existing software for the DeLuca's business in a more efficient manner.[12] DeLuca was under the impression, based on a presentation from October 27, 2006, that the software would be eighty percent (80%) ready to use out of the box, with the remaining twenty percent (20%) to be personally customized to the DeLuca's business by IDS.[13] DeLuca signed a Software License Agreement (hereinafter, "SLA") with SAP on December 6, 2006, finalizing the purchase of the new ERP system.[14] DeLuca also signed an agreement with IDS (hereinafter "IDS Agreement") finalizing the implementation specifics of the software.[15] At all times during the contract negotiation process, DeLuca was represented by counsel.[16]

Implementation of the software began in early January, 2007, and was scheduled to take six (6) months.[17] However, difficulties soon arose between DeLuca and IDS.[18] DeLuca alleges they tried to get the implementation process back on schedule, but it became obvious at some point that this would not ever happen.[19] The software was never installed, and it was never run.[20]

On March 7, 2008, DeLuca commenced this lawsuit through the filing of a Complaint in Assumpsit in the Bucks County Court of Common Pleas. An Amended Complaint was filed on July 21, 2010. DeLuca included in their Amended Complaint a claim against SAP for Breach of

---

[10] N.T. 5/14/13 PM, 5:4-7.
[11] N.T. 5/9/13 AM, 11:3-7.
[12] N.T. 5/8/13 PM, 27:2-12.
[13] N.T. 5/8/13 PM, 29:18-24.
[14] N.T. 5/14/13 PM, 31:3-6.
[15] N.T. 5/8/13 PM, 73:12-14.
[16] N.T. 5/9/13 PM, 3:3-5.
[17] See generally, N.T. 5/9/13 PM, 29:19-30:3; N.T. 5/10/13, 19:17-20.
[18] Id.
[19] N.T. 5/10/13. AM, 49:17-20.
[20] N.T. 5/9/13 PM, 32:22-33:3.

Contract, Fraudulent Inducement, Negligent Misrepresentation, and Civil Conspiracy. DeLuca included in their Amended Complaint a claim against IDS for Fraudulent Inducement and Civil Conspiracy.

On May 8, 2013, this case proceeded to trial in the Bucks County Court of Common Pleas.

On May 17, 2013, SAP filed a Motion for Nonsuit on Count I, the Breach of Contract claim against SAP, which was granted by the Court.

On May 20, 2013, SAP and IDS filed a Motion to Dismiss Plaintiffs' Claim for Punitive Damages, which was granted by the Court.

On May 22, 2013, after nine (9) days of trial, the jury returned a Verdict in favor of the Defendants.

On June 4, 2013, Plaintiffs filed a Motion for Post-Trial Relief.

On June 13, 2013, Defendant IDS filed a Response in Opposition to Plaintiffs' Motion for Post-Trial Relief.

On June 15, 2013, Defendant SAP filed a Response in Opposition to Plaintiffs' Motion for Post-Trial Relief.

On August 7, 2013, oral argument was held on Plaintiffs' Motion for Post-Trial Relief.

On September 17, 2013, the Court denied Plaintiffs' Motion for Post-Trial Relief.

On October 24, 2013, the Court entered Judgment in the matter.

On November 22, 2013, Plaintiffs filed a Notice of Appeal to the Pennsylvania Superior Court.

On November 26, 2013, the Court ordered Plaintiffs to file a Statement of Errors Complained of on Appeal.

4

On December 16, 2013, Plaintiffs filed a Statement of Matters Complained of on Appeal.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), a trial court may direct an appellant to file a Statement of Matters Complained of on Appeal, which "concisely identif[ies] each ruling or error that the appellant intends to challenge."[21] The statement should not be "redundant or provide lengthy explanations."[22] The purpose of the statement is to "aid trial judges in identifying and focusing" on the appellate issues.[23]

Plaintiff filed an extremely lengthy Rule 1925(b) statement. The Rule 1925(b) statement must be detailed enough to aid the judge in writing the Rule 1925(a) opinion, but not so lengthy that it fails to narrow the issues for an appropriate review.[24] The Superior Court has found that a party raising an extravagant number of issues in a Rule 1925(b) statement waived their issues on appeal due to misconduct and a breach of the duty of good faith and fair dealing with the court.[25] Plaintiff's Rule 1925(b) statement is approximately fourteen (14) pages long and identifies twenty (20) errors complained of on appeal, which contain twenty-eight (28) sub-sections of issues. Despite recent holdings by the Superior Court finding waiver for incredibly long Rule 1925(b) statements, this Court will attempt to consolidate the issues to aid the Superior Court in its analysis.[26] For the sake of brevity, Plaintiff's Rule 1925(b) statement will not be reproduced here.

Plaintiffs' Matters Complained of on Appeal can be consolidated and restated as follows:

---

[21] Pa. R. App. P. 1925(b)(4)(ii).

[22] Pa. R. App. P. 1925(b)(4)(iv).

[23] Commonwealth v. Smith, 955 A.2d 391, 393 (Pa. Super. 2008).

[24] Burgoyne v. Pinecrest Cmty. Ass'n, 924 A.2d 675, 678 (Pa. Super. 2007).

[25] Tucker v. R.M. Tours, 939 A.2d 343, 346-47 (Pa. Super. 2007).

[26] See Kanter v. Epstein, 866 A.2d 394 (Pa. Super. 2004).

1. The Court erred in granting a nonsuit on Count I of DeLuca's claim against SAP by failing to consider the following evidence:

   a. The Court erred in failing to correctly consider the weight of the evidence, particularly the testimony of Keith Peterson, in granting the nonsuit;

   b. The Court erred in failing to consider SAP's failure to deliver a fully integrated software system described in Appendix 1 to the Software License Agreement as an "ERP";

   c. The Court erred in failing to consider SAP's failure to meet express contract obligations to train employees of DeLuca Enterprises on the Variant Configurator;

   d. The Court erred in failing to consider SAP's failure to provide licenses for 25,000 users;

   e. The Court erred in failing to consider SAP's failure to ensure "use" of the software by completing the implementation promised by IDS;

   f. The Court erred in failing to consider SAP's failure to train IDS employees to use and implement the ERP software;

   g. The Court erred in granting the nonsuit when it had previously denied SAP's Motion for Summary Judgment just one day before trial commenced;

   h. The Court erred in granting the nonsuit without providing an explanation on the record.

2. The Court was bias against the Plaintiffs.

   a. The Court erred in prejudging and prematurely deciding the Plaintiff's Breach of Contract claim against SAP;

   b. The Court erred in abruptly interrupting and stopping the testimony of James DeLuca.

3. The Court erred when His Honor left the courtroom during the video deposition of Keith Peterson during trial.

6

## DISCUSSION

DeLuca seeks relief under Pennsylvania Rule of Civil Procedure 227.1(a)(1),[27] and requests an Order 1) reversing and vacating the Court's decision to grant Defendant SAP's Motion for Nonsuit, 2) reversing and vacating the Court's denial of DeLuca's Motion for Post-Trial Relief, and 3) ordering a new trial on Count I of the Amended Complaint before a newly assigned Trial Judge.

The decision to grant a new trial under Pa. R. Civ. P. 227.1 is within the trial court's discretion, and an appellate court will not disturb this decision unless the trial court abused its discretion or committed an error of law.[28] The disposition of post-trial motions is a matter left for the sound discretion of the trial court as well.[29] These decisions will not be reversed unless there is a manifest abuse of discretion or a clear error of law.[30]

I.      **The Court properly entered a nonsuit on Count I of Plaintiffs' claim because Plaintiffs did not present a prima facie case for Breach of Contract against SAP.**

DeLuca argues the Court erred in granting SAP's Motion for Nonsuit on Count I of the Amended Complaint for a Breach of Contract. The Court properly entered a Nonsuit on DeLuca's Breach of Contract claim against SAP because SAP delivered the software as required under the SLA, and any evidence of extra-contractual obligations is barred by both the parol evidence rule and the merger clause in the contract.

Pennsylvania Rule of Civil Procedure 230.1 governs compulsory nonsuits at trial, and allows for the trial court to "enter a nonsuit on any and all causes of action if, at the close of the

---

[27] Pa. R. Civ. P. 227.1.
[28] Fischer v. Troiano, 768 A.2d 1126, 1129 (Pa. Super. 2001).
[29] Com., Dept. of Transp. v. Consolidated Rail Corp., 519 A.2d 1058, 1059 (Pa. Cmwlth. 1986).
[30] Borough of Jefferson v. Bracco, 635 A.2d 754, 756 (Pa. Cmwlth. 1993).

7

plaintiff's case on liability, the plaintiff has failed to establish a right to relief."[31] The purpose of a compulsory nonsuit is to allow a defendant to test the adequacy of the plaintiff's evidence.[32] A compulsory nonsuit is proper if the jury could not reasonably conclude that the essential elements of the cause of action can be established.[33] The court must give the plaintiff the benefit of all facts and reasonable inferences arising from the evidence, and must resolve all conflicts in the plaintiff's favor.[34] If after the close of the plaintiff's case, they are unable to present a prima facie case, a compulsory nonsuit may be granted.[35]

DeLuca was unable to establish a prima facie showing for breach of contract. A breach of contract requires 1) a contract between the two parties, 2) a breach of this contract, and 3) damages suffered from the breach.[36] There was a valid contract between DeLuca and SAP, as both parties signed the Software License Agreement on December 6, 2006.[37] SAP delivered the software, and only warranted that the software would meet the functional specifications for a period of six (6) months.[38] All other warranties were disclaimed.[39] DeLuca was unable to introduce any evidence showing the software was defective or failed to conform to the terms of the SLA, because the software was never installed or run by DeLuca. Therefore, because DeLuca could not put forth evidence showing SAP did not conform to the SLA, DeLuca was unable to show a prima facie case for Breach of Contract. SAP's Motion for Nonsuit was properly granted by the Court.

---

[31] Pa. R. Civ. P. 230.1.  Pa.
[32] Morena v. S. Hills Health Sys., 462 A.2d 680, 682 (1983).
[33] Id.
[34] Alfonsi v. Huntington Hospital, Inc., 798 A.2d 216, 221 (Pa. Super. 2002).
[35] Dietzel v. Gurman, 806 A.2d 1264, 1268 (Pa. Super. Ct. 2002).
[36] Pennsy Supply, Inc. v. Am. Ash Recycling Corp. of Pennsylvania, 895 A.2d 595, 600 (Pa. Super. 2006).
[37] N.T. 5/14/13 PM, 31:3-6.
[38] N.T. 5/9/13 PM, 28:16-20; Software License Agreement § 7.1.
[39] See Software License Agreement § 7.2.

8.

### a. The Court properly considered the entire weight of the evidence, including Keith Peterson's testimony, in granting the Nonsuit.

In its decision to grant a Nonsuit in favor of SAP, the Court considered the entire weight of the evidence presented by DeLuca for their Breach of Contract Claim. DeLuca argues the testimony of Keith Peterson, a Senior Vice President at SAP in 2006,[40] established that SAP breached the contractual terms of the SLA. Keith Peterson's testimony showed that SAP still had involvement with DeLuca following the signing of the SLA and failed implementation. However, Keith Peterson was not involved in negotiating the contract between SAP and DeLuca, and only became involved once SAP became aware of the implementation problems.[41] Peterson testified that his communications with DeLuca related to alternative implementation ideas, due to DeLuca's problems with IDS.[42]

The Court granted SAP's Motion for Nonsuit against the weight of this evidence because Peterson's testimony failed to show that SAP did not deliver the software according to the terms of the SLA. Peterson's suggestions for alternative implementation ideas further proves that SAP was not in charge of, nor responsible for, the implementation of the ERP software. The Court properly weighed the testimony of all witnesses, the terms of the contract, and all other evidence in finding that DeLuca failed to present a prima facie case for its Breach of Contract Claim against SAP.

### b. SAP delivered the software to DeLuca, and there was no contractual obligation on SAP's part to deliver a "fully integrated software system."

The Court properly entered a Nonsuit in favor of SAP because DeLuca failed to present evidence showing SAP did not deliver the software. The SLA provided that SAP was to deliver

---

[40] Deposition of Keith Peterson, N.T. 13:11-14.
[41] Keith Peterson Dep. N.T. 152:1-3.
[42] Keith Peterson Dep. N.T. 154:20-155:12.

9

the ERP software to DeLuca.[43] There is no question that SAP performed this obligation, as several witnesses testified.[44] In fact, the box of software sat on top of DeLuca's table during the course of the trial for the jury to see.[45] DeLuca failed to demonstrate at trial that SAP contracted to deliver a "fully integrated software system." SAP was to deliver the ERP software and the Engineering, Construction, and Operations ("EC&O") module, and IDS contracted to configure the SAP software for use in the DeLuca business.[46]

The parol evidence rule states that when parties have deliberately put their agreements in writing, that writing is the best and only evidence of the agreement.[47] All prior conversations, dealings, and agreements are merged into this agreement and superseded by the subsequent written agreement.[48] Unless there is fraud, an accident, or mistake, parol evidence will not be admissible to contradict the terms of a contract that has been reduced to a written instrument.[49] The purpose of this rule is for the agreement to represent the entire agreement between the parties when unambiguous and clear language is used.[50]

The phrase "fully integrated software system" appears nowhere in the SLA. Therefore, all pre-contractual evidence suggesting a promise of a "fully integrated software system" is barred by the parol evidence rule, and is not considered in the formulation of a prima facie case for breach of contract.

---

[43] See Software License Agreement
[44] N.T. 5/13/13 AM, 36:21-23.
[45] N.T. 5/13/13 AM, 36:24-37:1.
[46] N.T. 5/8/13 PM, 31:5-14.
[47] Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2004).
[48] Id.                                               1172
[49] Kehr Packages, Inc. v. Fidelity Bank, Nat. Ass'n, 710 A.2d 1169 (Pa. Super. 1998).
[50] Stuart v. McChesney, 444 A.2d 659 (Pa. 1982).

661                    10

**c. The requirement to train employees for the Variant Configurator was extra-contractual, and thus barred by the parol evidence rule and merger clause in the contract.**

The Court properly entered a nonsuit in favor of SAP because the obligation to train employees on the Variant Configurator was extra-contractual and barred by the merger clause. DeLuca cannot rely on extra-contractual promises in a Breach of Contract action, as they are barred by both the parol evidence rule as well as the merger and integration clause in the contract.[51] Vincent DeLuca, the President and CEO of DeLuca, stated during his testimony that he understood the merger clause to mean everything was included in the agreement.[52] Counsel for DeLuca agreed that the training relating to the Variant Configurator software was extra-contractual.[53] Therefore, the Court did not err in failing to consider SAP's extra-contractual promise to train employees on the Variant Configurator in its decision to grant a nonsuit.

**d. DeLuca failed to raise the claim of the licenses for 25,000 users at trial, and thus it is waived.**

Pennsylvania Rule of Appellate Procedure 302(a) states that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal."[54] In order to preserve an issue for appeal, a litigant must make a timely objection at trial and raise the issue on a post-trial motion.[55] The issue must be raised during the proceedings so as to give the trial court the ability to rule on it correctly, an opportunity to properly consider the issue, and remove the need

---

[51] See Software License Agreement, § 11.9, "This Agreement and each Schedule and Appendix hereto constitute the complete and exclusive statement of the agreement between SAP and Licensee, and all previous representations, discussions, and writings are merged in, and superseded by, this Agreement. This Agreement may be modified only by a writing signed by both parties. This Agreement and each Appendix hereto shall prevail over any additional conflicting, or inconsistent terms and conditions which may appear on any purchase order or other document furnished by Licensee to SAP."
[52] N.T. 5/9/13 AM, 9:11-19.
[53] N.T. 5/17/13 AM, 127:7-12.
[54] Pa. R. App. P. 302(a).
[55] Reilly by Reilly v. Southeastern Pennsylvania Transp. Authority, 507 A.2d 204, 214 (Pa. 1985).

11

for an appeal.[56] Our Supreme Court has summarized this by stating, for the purposes of appeal, "what is not of record does not exist."[57]

DeLuca never presented this claim at trial, and never raised this argument in opposition to SAP's Motion for Nonsuit. DeLuca has cited to many notes of testimony regarding the Breach of Contract Claim, none of which point to the user license issue. A complete search of the record confirms this was never brought up during any witness testimony. Therefore, it is waived under Pa. R.A.P. 302(a).

### e. The Court properly interpreted the term "use" in the SLA in finding that SAP was not contractually obligated to guarantee the work of IDS.

DeLuca argues that under Section 1.9 and 2.1(a) of the SLA, DeLuca was denied the right to "use" the software.[58] DeLuca argues the term "use" means SAP itself was contractually obligated to load, execute, and access the programming. However, the SLA sets forth in Section 7.1 of the contract that the company did not promise the software would meet DeLuca's business requirements.[59] SAP promised that it would deliver the software, which all parties agree it did.

---

[56] Lincoln Philadelphia Realty Assoc. v. Bd. of Revision of Taxes of Philadelphia, 758 A.2d 1178, 1186 (Pa. 2000); Gustine Uniontown Associates, Ltd. ex rel. Gustine Uniontown, Inc. v. Anthony Crane Rental, Inc., 892 A.2d 830, 835 (Pa. Super. 2006).

[57] Rosselli v. Rosselli, 750 A.2d 355, 359 (Pa. 2000).

[58] § 1.9 "'Use' means to activate the processing capabilities of the Software, load, execute, access, employ the Software, or display information resulting from such capabilities; § 2.1(a) "SAP grants to Licensee and to Licensee's Subsidiaries, a non-exclusive, perpetual (unless terminated in accordance with Section 5 herein) license to Use the Software, Documentation, other SAP Proprietary Information, at specified site(s) within the Territory to run Licensee's internal business operations and to provide internal training and testing for such internal business operations and as further set forth in Appendices hereto. This license does not permit Licensee to use the SAP Proprietary Information to provide services to third parties (e.g., business process outsourcing, service bureau applications or third party training). Business Partners may have screen access to the Software solely in conjunction with Licensee's Use and may not Use the Software to run any of their business operations."

[59] § 7.1 Warranty. "SAP warrants that the Software will substantially conform to the functional specifications contained in the Documentation for six months following delivery. The warranty shall not apply: (i) if the Software is not used in accordance with the Documentation; or (ii) if the defect is caused by a Modification, Licensee, third-party software, or third party database. SAP does not warrant that the Software will operate uninterrupted or that it will be free from minor defects of errors that do not materially affect such performance, **or that the applications contained in the Software are designed to meet all of the Licensee's business requirements.**" (emphasis added).

IDS was then responsible for implementing the software to DeLuca's particular business customization.

The record shows that the software was never run, and therefore DeLuca was unable to show that the software did not work.[60] The SLA contains no terms or conditions showing that SAP guaranteed the work of IDS on implementing the software. The Court determined during the trial that there was no ambiguity in the contract regarding the term "use," and that it would have the regular and ordinary meaning in this context.[61]

### f. The Court properly separated SAP's contractual obligations from IDS' contractual obligations in finding that DeLuca failed to make a prima facie claim for Breach of Contract.

DeLuca claims that SAP improperly licensed the software under the SLA, knowing that IDS personnel were inexperienced in implementing this software. As previously stated, SAP specifically set forth a warranty guaranteeing delivery of the software, but not that the software would meet DeLuca's business requirements. Further, the SLA never guaranteed the work of IDS. DeLuca was free to file a Breach of Contract Claim against IDS in its Amended Complaint, but failed to do so.[62] DeLuca may not recover on a Breach of Contract Claim against SAP for the failure of IDS to implement the software correctly. Therefore, the actions of IDS were not considered in DeLuca's prima facie case for Breach of Contract against SAP.

---

[60] See N.T. 5/9/13 PM, 33:1-3 (Mr. Loftus: Did you ever go on a laptop or a desktop to run the SAP software? Joseph DeLuca: We did not get to that point.).
[61] N.T. 5/15/13 AM, 10:4-7.
[62] Initially, IDS filed a counterclaim against DeLuca for Breach of Contract (for the failure of DeLuca to pay invoices). DeLuca then asserted a counterclaim to IDS' New Matter for Breach of Contract. The night before trial, IDS dropped its counterclaim, and as a result DeLuca's Breach of Contract claim against IDS disappeared as well. See N.T. 5/8/13 AM, 77:15-21.

13

**g. The denial of SAP's Motion for Summary Judgment has no bearing on SAP's Motion for Nonsuit, and the Court is not required to explain rulings on the record.**

DeLuca claims the jury should have been given the Breach of Contract Claim against SAP because the Court denied SAP's extensive Motion for Summary Judgment just one day before trial. The granting of summary judgment is proper where there is no genuine issue of material fact.[63] A nonsuit is proper when a plaintiff is unable to present a prima facie case following their case-in-chief.[64] These two standards are different, and have no relation to one another. Therefore, the Court was within its authority to grant SAP's Motion for Nonsuit despite denying SAP's Motion for Summary Judgment prior to trial.

DeLuca argues that the Court should have provided an explanation on the record for its decision to grant a Nonsuit in favor of SAP. There is nothing in the Pennsylvania Rules of Civil Procedure requiring a judge to state such reasoning on the record. The Court is unaware of any case law requiring an explanation or reasoning be made in such a situation.

**II. There is no evidence on the record showing any prejudgment or premature decisions made by the Court against the Plaintiffs throughout the course of the trial.**

DeLuca has requested a new trial in front of a new trial judge, and has accused the Court of prematurely deciding DeLuca's Breach of Contract claim against SAP. This is an allegation complete unsupported by the record.

---

[63] Pa. R. C. P. 1035.2.
[64] Dietzel, 806 A.2d at 1268.

14

### a. The Court did not show any bias or prejudgment, and did not predetermine the Plaintiffs' case.

There is no evidence on the record showing prejudgment or predetermined decision making by the Court. The mere fact that a judge rules against a certain party does not establish bias of any kind.[65] If the appellate court determines that the party received a fair trial, then an allegation of judicial bias is not borne out.[66]

DeLuca received a fair trial. They were allowed to present all of their witnesses and the trial was conducted in a fair manner according to the Pennsylvania Rules of Civil Procedure. At no point did the Court interject in an inappropriate manner, or limit DeLuca from presenting their case. Further, DeLuca has not cited to a single instance in the record suggesting bias other than the Court asking questions of James DeLuca during his direct examination.

### b. The Court properly questioned the witness according to the Pennsylvania Rules of Civil Procedure and the Pennsylvania Rules of Evidence.

DeLuca has mischaracterized the record in suggesting that the Court "stopped" the direct testimony of James DeLuca. The Court merely clarified testimony and asked its own questions of the witness.[67] It is within the trial judge's discretion to control witnesses, including their scope and presentation of testimony.[68] The trial judge has the right and duty to question witnesses about any and all relevant information.[69] The mere fact that a trial judge has questioned a witness does not show bias in favor of or against a party.[70] The Court in this case questioned a witness outside the presence of a jury to elicit facts and clear up a possible legal

---

[65] Com. v. Travaglia, 661 A.2d 352, 367 (Pa. 1995).

[66] Id., see also Reilly by Reilly v. Se. Pennsylvania Transp. Auth., 489 A.2d 1291, 1297 (Pa. 1985).

[67] N.T. 5/10/13 AM, 44:8.

[68] See Pa. R.E. 611: Mode and Order of Examining Witnesses and Presenting Evidence.

[69] Commonwealth v. Watts, 56 A.2d 81, 83 (Pa. 1948); see also Commonwealth v. Lanza, 323 A.2d 178, 179 (Pa. Super. 1974) ("[A] trial judge has the inherent right, and, at times, the duty to question witnesses to clarify existing facts and to elicit new information.").

[70] Id.

15

misconception. The colloquy pointed to by DeLuca in their Concise Statement is reproduced as follows:

> THE COURT: Have a seat everyone. Counsel, you can help me, because this is a fraud in the inducement case and we are now talking about the execution of a contract, aren't we?
>
> MR. FENNINGHAM: Just the proposed –
>
> THE COURT: Aren't we past (sic) the inducement of what they said they could do? You are now talking about whether or not after they've said what they can do, they can do it. Have we past (sic) the line between inducement and execution?
>
> MR. FENNINGHAM: We're still in the inducement, Your Honor. I'm leading into – what I'm covering is three things. One is the involvement of SAP in the actual implementation project, which if you heard in the opening they said that their position is –
>
> THE COURT: Just answer the questions, please.
>
> MR. FENNINGHAM: I'm trying to. Second thing is we're showing the continuing representations of being able to deliver the All-in-One Solution. I'm leading right into the letters...[71]

The Court excused the jury during James DeLuca's testimony to clarify certain issues with DeLuca's counsel.[72] The Court did not limit James DeLuca's testimony in any way, as he testified for three days of the trial.[73] There is nothing in this colloquy suggesting a bias. Therefore, the Court acted properly and within its discretion.

---

[71] N.T. 5/10/13 AM, 44:22-45:21.
[72] Id.
[73] N.T. 5/9/13 AM – 5/13/13 AM.

16

### III. The Plaintiffs claim of error in His Honor leaving the courtroom during the video deposition of Keith Peterson is waived on appeal.

DeLuca argues that His Honor left the courtroom for "significant periods of time" during the playing of Keith Peterson's video deposition, and that as a result His Honor was unable to consider his testimony in granting the Nonsuit. There were no objections made on the record before, during, or after Keith Peterson's video testimony to this subject.[74] This issue is therefore waived under Pa. R.A.P. 302(a).

Additionally, pursuant to the Handbook for Pennsylvania Trial Judges: Management of Civil Jury Trials, a trial judge may retire to their chambers to work on other legal matters involving the case while the jury is viewing the deposition.[75] The trial judge should inform the jury about the process of video depositions, and indicate that this deposition has been reviewed.[76] The trial judge should return to announce breaks or recesses following the conclusion of the videos.[77] Here, the Court explained to the jury the importance of a video deposition, and indicated that legal rulings had been made with respect to these video depositions.[78] The jury was aware that the Court read the deposition and made certain legal rulings as to admissibility. Further, after each video, the Court gave directions to the jury regarding breaks along with concluding day instructions.[79] There was no evidence on the record suggesting the Court did not comply with these recommendations.

---

[74] See N.T. 5/14/13 PM, 73:2-20; N.T. 5/15/13 AM, 2:11-3:15.
[75] The Honorable Thomas A. Wallitsch et al., Handbook for Pennsylvania Trial Judges: Management of Civil Jury Trials, § 2, p. 39 (1st ed. 2000).
[76] Id.
[77] Id.
[78] See N.T. 5/14/13 AM, 13:23-25.
[79] See N.T. 5/14/13 AM, 14:7-14; 3; N.T. 5/15/13 AM, 3: 7-13.

17

## CONCLUSION

For the foregoing reasons, this Court properly denied the Plaintiffs' Motion for Post-Trial Relief.

BY THE COURT:

2-8-2014
DATE

ROBERT J. MELLON, J.

18